IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARY C. WOODS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-CV-771 |
| | § | |
| THE VILLAGE OF SURFSIDE BEACH | § | |
| and JAMES BEDWARD, | § | |
| *in His Capacity as Mayor*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ABATING CASE
## PENDING RESOLUTION OF STATE COURT LITIGATION

Plaintiffs bring this action under 42 U.S.C. § 1983, alleging that the Village of Surfside Beach and James Bedford, in his official capacity as mayor of Surfside Beach, violated the Takings Clause of the Fifth Amendment of the United States Constitution and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[1]

Plaintiffs own elevated beach houses on Beach Drive in the Village of Surfside Beach (the "Village"). Plaintiffs claim that their beach houses were originally protected by some boulders and rip-rap and two aluminum bulkheads that the Village allegedly agreed to maintain. Plaintiffs allege that the Village removed the boulders and rip-rap and that the Village failed to maintain the bulkheads. As a result, according to Plaintiffs, one of the bulkheads was damaged during Hurricanes Rita and Katrina in 2005, and the high tides in October 2006 damaged the other bulkhead. The sand that stabilized the pilings of some of the beach houses and covered water and sewer lines serving

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

these houses was lost during the high tides of October 2006, and many of the beach houses were damaged.

Plaintiffs claim that they are unable to access their houses and that they cannot repair them because the Village has disconnected the water and sewer systems associated with Plaintiffs' houses, removed the water meters, piled up rocks that inhibit them from accessing the houses, and, allegedly, caused CenterPoint Energy to disconnect the power and remove the utility poles that served the houses. The Village claims that it had to disconnect the water to the houses because the water lines were broken during a high tide event that occurred in October 2006. Consequently, according to the Village, the sewer could not function. The Village contends that it eventually capped the ends of the lines for public health and safety reasons, and that the rock pile that inhibits Plaintiffs from accessing their houses was placed there to save Beach Drive from further erosion.

Plaintiffs requested that this Court issue an injunction requiring the Village to reconnect the water and sewer utilities, restore electric services, remove the boulders that prohibit pedestrian and vehicular access to the houses, and allow Plaintiffs to repair their houses without the normal permit requirements. On January 12, 2007, the Court conducted a Preliminary Injunction Hearing regarding Plaintiffs' Injunction Application. The Court, after hearing from Plaintiffs and Defendants, ordered the Village to reinstitute water and sewer to Plaintiffs' homes—at the exclusive cost of the homeowners. The Court denied Plaintiffs' request regarding the rock barriers, which served the legitimate purpose of protecting the paved way, and their request for electricity to be restored, since CenterPoint Energy was not even a Party to the litigation. The Court ordered the Village to be practical regarding issuing permits for the repairs Plaintiffs sought to make to the beach houses, but the Court denied Plaintiffs' request to be able to repair their homes without obtaining the permits

that are normally required for repairs to dwellings in the Village.[2] The Injunction was valid through May 31, 2007.

In addition to the instant claim, Plaintiffs have a lawsuit pending in state court in Brazoria County that originally did not include the Village or Mayor Bedward. On May 11, 2007, the Village and Mayor Bedward were served in the Brazoria County state suit. On June 6, 2006, the Parties appeared in this Court for a Status Conference.

Plaintiffs informed the Court that they have been unable to repair their homes. Under Texas law, a local government can only issue a permit or certificate to make repairs to a house that "is located seaward of the boundary of the public beach" if the Texas General Land Office determines that

> (1) The line of vegetation establishing the boundary of the public beach has moved as a result of erosion or a meteorological event;
> (2) The house was located landward of the natural line of vegetation before the erosion or meteorological event occurred;
> (3) No portion of the house is located seaward of mean high tide;
> (4) The house was not damaged more than 50 percent or destroyed as the result of a meteorological event; and
> (5) The house does not present an imminent threat to public health and safety.

31 Tex. Admin. Code § 15.11(c) (2006) (General Land Office). The Village submitted Plaintiffs' applications for permits to reconnect water lines to the Texas General Land Office, and the General Land Office sent comments stating that the beach houses were seaward of the mean high tide and that the Village could not issue the permits.[3]

---

[2]On March 8, 2007, the Court signed a jointly submitted "Order Granting Preliminary Injunction" that reiterated the relief the Court granted during the January hearing. The March Order also allowed the Village to submit any permit applications on water or sewer connections and repairs to the Texas General Land Office for comment.

[3]Whether the houses are indeed seaward of the mean high tide is an issue that is currently before the Brazoria county judge.

This case presents legitimate Eleventh Amendment concerns. Plaintiffs are essentially asking the Court to intercede in Texas's application of Texas law, and specifically the Texas Land Commissioner's application of the Open Beaches Act. Additionally, the Court is concerned that issuing the relief Plaintiffs request would put the Village in a position of violating state law. Since the Village and Mayor Bedward are now parties in the Brazoria county action, it is more appropriate for that judge to address Plaintiffs' requests. The Court enunciated these concerns during the Status Conference, and the Parties concurred that an abatement of this action until the state court litigation is resolved should alleviate at least some of the Court's federalism concerns.[4]

Pursuant to counsel's agreement during the Status Conference on June 6, 2007 and in consideration of Statute of Limitations concerns, the Court **ABATES** this action pending resolution of ongoing and active state court litigation. Each Party is to bear its own taxable costs, expenses, and attorneys' fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 13th day of June, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge

---

[4] The Court particularly commends Plaintiffs' counsel for acting as both an advocate and an officer of the Court in this concession on the Record. Candor, even at the expense of advocacy, is often difficult and always highly impressive.